WO          IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

DUSTIN W. CLARK, )
 )
                Plaintiff, )
 )
  vs. )
 )
COMMISSIONER OF SOCIAL SECURITY )
ADMINISTRATION, )
 )  No. 3:18-cv-0224-HRH
                Defendant. )
_____)

O R D E R

This is an action for judicial review of the denial of disability benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401-434, 1381-1383f. Plaintiff Dustin Clark has timely filed his opening brief,[1] to which defendant, the Commissioner of Social Security, has timely responded.[2] Oral argument was not requested and is not deemed necessary.

Procedural Background

On March 23, 2015, plaintiff filed applications for disability benefits under Title II and Title XVI of the Social Security Act, alleging that he became disabled on November 1, 2011. Plaintiff alleged that he is disabled due to seizures/epilepsy, cervical spine

---

[1]Docket No. 12.

[2]Docket No. 17.

impairment, and severe back pain. Plaintiff's applications were denied initially, and plaintiff requested a hearing. Administrative hearings were held on November 21, 2016 and October 13, 2017. An administrative law judge (ALJ) then denied plaintiff's applications. Plaintiff sought review of the ALJ's unfavorable decision. On September 6, 2018, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's November 16, 2017 decision the final decision of the Commissioner. On October 1, 2018, plaintiff commenced this action in which he asks the court to review the Commissioner's final decision.

## General Background

Plaintiff was born on December 19, 1968. He was 47 years old at the time of the first administrative hearing and 48 years old at the time of the second administrative hearing. Plaintiff has a high school education and one year of trade school. Plaintiff's past relevant work includes work as a mortgage loan officer, a branch manager, and a charter boat operator.

## The ALJ's Decision

The ALJ first determined that plaintiff met "the insured status requirements of the Social Security Act through December 31, 2017."[3]

The ALJ then applied the five-step sequential analysis used to determine whether an individual is disabled.[4]

---

[3]Admin. Rec. at 18.

[4]The five steps are as follows:

(continued...)

At step one, the ALJ found that plaintiff had "not engaged in substantial gainful activity since November 1, 2011, the alleged onset date. . . ."[5]

At step two, the ALJ found that plaintiff had "the following severe impairments: degenerative disc disease of the cervical and lumbar spine, episodic seizures, alcohol abuse, status-post carpal tunnel syndrome and cubital tunnel syndrome surgery on the left. . . ."[6] The ALJ found plaintiff's hand tremor and thoracic kyphosis non-severe.[7] The ALJ found

---

[4](...continued)
> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
> Step two: Is the claimant's alleged impairment sufficiently severe to limit . . . h[is] ability to work? If so, proceed to step three. If not, the claimant is not disabled.
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
> Step four: Does the claimant possess the residual fun ctional capacity ("RFC") to perform . . . h[is] past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow . . . h[im] to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[5]Admin. Rec. at 18.

[6]Admin. Rec. at 18.

[7]Admin. Rec. at 18.

that plaintiff's "medically determinable mental impairment of alcohol abuse does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere."[8] However, the ALJ found that plaintiff's "alcohol abuse has been found to be a severe impairment based on <u>physical</u> ramifications of [his] drinking, including seizures[.]"[9] The ALJ considered the "paragraph B" criteria and found that plaintiff had no limitation as to understanding, remembering, or applying information; no limitations as to interacting with others; no limitations as to concentrating, persisting, or maintaining pace; and no limitations as to adapting or managing oneself.[10]

At step three, the ALJ found that plaintiff did not "have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. . . ."[11] The ALJ considered Listings 1.04 (disorders of the spine), 11.02 (epilepsy), 1.02 (major dysfunction of a joint), and 11.14 (peripheral neuropathy).

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC." <u>Bray v. Comm'r of Social Security Admin.</u>, 554 F.3d 1219, 1222–23 (9th Cir. 2009). The ALJ found that plaintiff had

---

[8]Admin. Rec. at 19.

[9]Admin. Rec. at 19 (emphasis added).

[10]Admin. Rec. at 19-20.

[11]Admin. Rec. at 20.

the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) with the following exceptions. The claimant requires a sit/stand option allowing the claimant to alternate sitting or standing positions at one-hour intervals throughout the day. The claimant can frequently balance, and occasionally climb ramps or stairs, stoop, kneel, crouch, and crawl. The claimant can never climb ladders, ropes, or scaffolds. The claimant can have frequent exposure to moving machinery and no exposure to unprotected heights.[12]

The ALJ found plaintiff's pain and symptom statements to be less than credible because they were inconsistent with the medical evidence, because his testimony about when he stopped drinking was inconsistent, and based on his daily activities.[13]

The ALJ gave great weight[14] to Dr. Jessen's opinions.[15] The ALJ gave great weight to Dr. Lebeau's opinion.[16] ALJ gave little weight[17] to Dr. Rullman's opinion.[18] The ALJ also

---

[12] Admin. Rec. at 21.

[13] Admin. Rec. at 22, 28.

[14] Admin. Rec. at 23-24.

[15] Dr. Jessen treated plaintiff for his seizures. On April 15, 2015, she opined that plaintiff's prognosis was good "if no alcohol." Admin. Rec. at 958. The ALJ also treated her June 7, 2017 treatment notes, Admin. Rec. at 1156-1161, as an "opinion that the claimant's seizures disorder was not disabling[.]" Admin. Rec. at 23-24.

[16] Admin. Rec. at 29. Dr. Lebeau's opinion is discussed below in detail.

[17] Admin. Rec. at 25.

[18] Dr. Rullman was plaintiff's PCP for a short period of time. On September 10, 2014, he noted that plaintiff's "[e]xpected recovery to take > 12 months." Admin. Rec. at 504.

gave little weight to Dr. Humphreys' opinions.[19] And, the ALJ gave little weight[20] to Dr. Caldwell's opinion.[21]

At step four, the ALJ found that plaintiff was "capable of performing past relevant work as a mortgage loan officer and branch manager."[22]

Thus, the ALJ concluded that plaintiff had "not been under a disability, as defined in the Social Security Act, from November 1, 2011, through the date of this decision. . . ."[23]

Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner. . . ." The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards." Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). "Substantial evidence

---

[19] Admin. Rec. at 25-27. Dr. Humphreys' opinions are discussed below in detail.

[20] Admin. Rec. at 30.

[21] On October 31, 2015, Jay E. Caldwell, M.D., opined that plaintiff could occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, stand/walk for 6 hours, sit for 6 hours, push/pull with left upper extremities occasionally, was unlimited as to climbing ramps/stairs, balancing, kneeling, and crawling; could never climb ladder/scaffolds; could frequently stoop; that prior to 12/13/15, handling/fingering was unlimited in the right but was limited to never on the left; that after 12/13/15, reaching overhead, handling, and fingering was okay on the right but limited to occasionally on the left; feeling was unlimited at all times; and he should avoid concentrated exposure to vibration and hazards. Admin. Rec. at 886-889.

[22] Admin. Rec. at 30.

[23] Admin. Rec. at 30.

is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Id. (quoting Andrews, 53 F.3d at 1039). If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision. Id. But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'" Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

## Discussion

Plaintiff first argues that the ALJ erred as to Dr. Humphreys' opinions. Dr. Humphreys was a treating physician and provided three opinions that the ALJ considered. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). "At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." Id. (quoting Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)). "[I]f the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record

for so doing." Id. (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)). Dr. Humphreys' opinions were contradicted by Dr. Lebeau's opinion and Dr. Caldwell's opinion; and so, the ALJ was required to give specific and legitimate reasons for rejecting Dr. Humphreys' opinions.

On June 13, 2014, Dr. Humphreys wrote that plaintiff

> initially presented to our office on 3/27/14. He was diagnosed with neck pain and C7 radiculopathy with questionable ulnar neuropathy. Per his symtomology [sic] and imaging studies, surgical intervention was medically necessary. [H]e underwent an Anterior Cervical Discectomy and Fusion C6-7. Post operatively he has been having steady improvement in muscular strength on the left. Unfortunately, he has continued to have a seizure disorder that is being followed by Dr. Kristen Jessen. In regards to his disability, he is still recovering post operatively for his cervical spine. He is unable to work currently and will be re-evaluated at his next appointment on 7/8/14. We cannot predict at this time that he will be disabled for the next 12 months for his cervical spine or left hand.[24]

The ALJ rejected Dr. Humphreys' opinion that plaintiff could not work because "it [was] not consistent with the overall objective medical evidence."[25] The ALJ explained that "[t]he treatment records do support [that] the claimant was improving" and cited Dr. Humphreys' May 19, 2015 treatment note.[26] On that day, Dr. Humphreys noted that plaintiff came in

---

[24]Admin. Rec. at 506.

[25]Admin. Rec. at 25.

[26]Admin. Rec. at 25.

> with increased pain since October. He has pain to his arm and does appear to have more atrophy in his arm, first web space, and thenar musculature. He began to have pain with motion of his neck that goes into this left arm. He had plain films, which show good alignment.[27] He has more difficulty walking with a bit of a tremor.[28]

The ALJ then somewhat confusingly stated that "[i]n addition, when the claimant saw Dr. Humphreys on May 19, 2015, he reported increased pain since October . . . , which supports he did have improvement in his symptoms following surgery."[29]

While the ALJ's explanation of why he was rejecting Dr. Humphreys' 2014 opinion was confusing and may have been error, any error as to Dr. Humphreys' 2014 opinion was harmless. "[H]armless error . . . exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." Garcia v. Comm'r of Social Sec., 768 F.3d 925, 932 (9th Cir. 2014) (citation omitted). In his 2014 note, Dr. Humphreys expressly stated that he did not know if plaintiff's left upper extremity impairment would continue for more than 12 months. An impairment must have lasted or be expected to last for 12 continuous months in order to be considered disabling. Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012). Because Dr. Humphreys was not sure if plaintiff's left upper extremity would last for longer than 12 months, even if the ALJ had given more weight to his 2014 opinion, it would not have changed the ALJ's ultimate

---

[27]Admin. Rec. at 654.

[28]Admin. Rec. at 622.

[29]Admin. Rec. at 25.

nondisability determination.

The ALJ next considered Dr. Humphreys' May 2015 opinion. On May 21, 2015, Dr. Humphreys opined that plaintiff could sit for less than one hour; stand/walk for less than one hour; could occasionally lift/carry 10 pounds; could occasionally lift up to 20 pounds; could not walk one block at a reasonable pace on rough or uneven surfaces; could not climb a few stairs; must use a cane while standing or walking; could rarely grasp, finger, or overhead reach with his left hand; could frequently grasp, finger, and overhead reach on the right; would frequently experience fatigue or pain that would be severe enough to interfere with attention and concentration; and would need unscheduled breaks.[30]

The ALJ rejected Dr. Humphreys' 2015 opinion because "it [was] not consistent with the overall objective medical evidence" and because plaintiff "was found to have improvement of his symptoms following" his June 2015 surgery on his ulnar nerve.[31] The ALJ again relied on Dr. Humphreys' May 19, 2015 treatment note, but this treatment note does not show that plaintiff's condition was improving. Rather, it indicates that plaintiff had increased pain and atrophy. The ALJ also cited to Dr. Bote's July 30, 2015, treatment note, in which Dr. Bote indicated that plaintiff reported that he "continues to have eccymosis along

---

[30]Admin. Rec. at 968-971.

[31]Admin. Rec. at 25. Dr. Bote did left cubital tunnel decompression and ulnar nerve transposition surgery on June 26, 2015. Admin. Rec. at 634.

the arm" and "some slight numbness to the digits, but [i]t is not severe."[32] Dr. Bote also noted that plaintiff "explain[ed] that he has good and bad days. Patient complains . . . that he is in pain [but is] starting to have some movement in fingers."[33]

The reasons the ALJ gave for rejecting Dr. Humphreys' 2015 opinions were not legitimate. The medical evidence of record does not show that plaintiff's left upper extremity impairment was improving, but rather that plaintiff was continuing to have pain and numbness and other problems associated with his left upper extremity.

The ALJ also considered Dr. Humphrey's February 2017 opinion. On February 21, 2017, Dr. Humphreys opined that plaintiff could sit less than one hour; could stand/walk less than one hour; could occasionally lift up to 20 pounds; could occasionally carry up to 10 pounds; could not walk one block at a reasonable pace on rough or uneven surfaces; could not climb a few stairs; must use a cane when standing or walking; could never grasp, finger, or reach overhead with his left arm/hand; could frequently grasp, finger, and reach overhead with his right arm/hand; would frequently experience pain or fatigue severe enough to interfere with concentration and attention; would need to take unscheduled breaks; and would miss more than 3 days of work per month.[34]

The ALJ rejected Dr. Humphreys' February 2017 opinion because "it [was] not

---

[32]Admin. Rec. at 956.

[33]Admin. Rec. at 956.

[34]Admin. Rec. at 1014-1017.

consistent with the overall objective evidence."[35] In support of this finding, the ALJ cited to Dr. Humphreys' April 13, 2017 treatment note that plaintiff "had 5/5 strength in the muscles tested in the upper extremities and lower extremities. He also had normal sensation."[36] But, at the April 13, 2017 appointment, Dr. Humphreys noted that plaintiff "continues to have weakness and pain, patient also has left hand atrophy. Patient is ambulating with a cane today."[37] And, at plaintiff's August 2017 appointment with Dr. Humphreys, the doctor noted that plaintiff "continue[s] to have ulnar radiculopathy in his left hand which [has] now left him with clawing deformity."[38] The ALJ also cited to Dr. Hansen's October 9, 2015 finding that plaintiff "had normal bilateral grip strength of both hands."[39] But, Dr. Hansen also found that "[t]he extension of [plaintiff's] left fingers 2, 3, 4, & 5 is weaker than the right" and that "[t]here is atrophy of the left hand thenar muscles."[40] There is not substantial evidence supporting the ALJ's finding that Dr. Humphreys' February 2017 opinion was inconsistent with the medical evidence of record. Rather, the medical evidence of record supports Dr. Humphreys' opinion that plaintiff had significant limitations

---

[35] Admin. Rec. at 26.

[36] Admin. Rec. at 26.

[37] Admin. Rec. at 1018.

[38] Admin. Rec. at 1228.

[39] Admin. Rec. at 26.

[40] Admin. Rec. at 876-877.

as a result of his left upper extremity impairment.[41]

If the ALJ erred as to Dr. Humphrey's 2015 and 2017 opinions, which he did, plaintiff argues that this error was not harmless. Plaintiff argues that if the ALJ had given Dr. Humphreys' opinions greater weight, the ALJ would have included in plaintiff's RFC the limitation that plaintiff could rarely or never grasp, finger, or reach overhead with his left arm/hand. If such a limitation would have been included in his RFC, plaintiff argues that it is possible that the ALJ would have reached a different conclusion as to disability.

Defendant, however, argues that any error as to Dr. Humphreys' 2015 and 2017 opinions was harmless because the vocational expert testified that plaintiff could still perform his past relevant work as a mortgage loan officer or branch manager even if he could not use his left upper extremity. Weiss was given a hypothetical person who could use his "left upper extremity, regarding overhead reaching, handling, and fingering," as "more of an assist in his non-dominant upper extremity than full usage."[42] Weiss testified that such a person could perform plaintiff's past relevant work as a branch manager or mortgage loan officer.[43] Plaintiff's lawyer then asked about the "need for keyboarding, any use of both hands" for the

---

[41]The ALJ also treated a form Dr. Humphreys completed on May 21, 2017 as a medical opinion. Admin. Rec. at 27. On the form, Dr. Humphreys indicated that plaintiff was not expected to recover from his condition. Admin. Rec. at 1237. The ALJ rejected this "opinion" for the same reason and based on the same evidence as Dr. Humphreys' February 2017 opinion. The ALJ erred as to this "opinion" for the same reasons the ALJ erred as to Dr. Humphreys' February 2017 opinion.

[42]Admin. Rec. at 98.

[43]Admin. Rec. at 99.

-13-

mortgage loan officer job.⁴⁴ Weiss testified that "[t]he handbook for analyzing jobs doesn't address bilateral hand usage" but that because "you're talking about dat[a] entry, which is done with the fingers", it would be possible to do that job with just one hand, as "[a] lot of people hunt and peck when they type."⁴⁵

While defendant is correct that the outcome here would not have been any different had the ALJ included a limitation that plaintiff could never use his left upper extremity to grasp, finger, or reach overhead, that does not necessarily mean that the ALJ's error as to Dr. Humphreys' 2015 and February 2017 opinions was harmless. In both opinions, Dr. Humphrey opined that plaintiff could sit for one hour, stand for one hour, and walk for one hour. Weiss testified that if Dr. Humphreys meant that the person could only work a three-hour day, then that would not be full-time employment.⁴⁶ So, it is at least possible that if the ALJ had given more weight to these opinions, the outcome here would have been different. In addition, in his February 2017 opinion, Dr. Humphreys opined that plaintiff would miss at least 3 days of work each month, and Weiss testified that there would be no work for such a person.⁴⁷ Had the ALJ given more weight to this portion of Dr. Humphreys' 2017 opinion, it is possible that the ALJ's nondisability determination might have been different.

---

⁴⁴Admin. Rec. at 99-100.

⁴⁵Admin. Rec. at 100.

⁴⁶Admin. Rec. at 103.

⁴⁷Admin. Rec. at 76.

Plaintiff next argues that the ALJ erred in giving great weight to Dr. Lebeau's opinion. Dr. Lebeau testified at the administrative hearing as a medical expert. Dr. Lebeau opined that plaintiff could frequently lift/carry 10 pounds; occasionally lift/carry 50 pounds; could sit for 6 hours; could stand/walk for 3 hours; could occasionally climb stairs/ramps; could never climb ladders/scaffolds; could balance frequently; could occasionally stoop, kneel, crouch, and crawl; could not be around unprotected heights; could frequently be around moving mechanical parts; could frequently operate a motor vehicle; and could continuously be exposed to humidity, wetness, dust, odors, fumes, heat, cold, and vibrations.[48] Dr. Lebeau noted that plaintiff's ulnar nerve tunnel had been operated on but that he did not "know exactly what the status of that is now."[49] In reference to plaintiff's carpal tunnel syndrome, Dr. Lebeau testified that plaintiff "had that sort of thing[.]"[50] As for any functional limitations associated with plaintiff's carpal tunnel syndrome and cubital tunnel syndrome, Dr. Lebeau testified that although plaintiff "does have perhaps a little arm weakness[,] [i]t shouldn't be too severe."[51] Dr. Lebeau testified that "I can't say that I know of any persisting or lingering radicular problem and this would be in the arms."[52] Dr. Lebeau further testified

---

[48]Admin. Rec. at 50-52.

[49]Admin. Rec. at 48.

[50]Admin. Rec. at 48.

[51]Admin. Rec. at 50.

[52]Admin. Rec. at 53.

that he did not "see any reason to restrict" plaintiff's use of his hands.[53]

The ALJ gave great weight to Dr. Lebeau's opinion because he "had the opportunity to review the longitudinal record" and because he "is familiar with Social Security rules and regulations."[54] Plaintiff argues that the ALJ erred in giving Dr. Lebeau's opinion great weight because he provided no supporting explanations for his opinion and in fact, appeared to not be familiar with the medical evidence of record. "The weight afforded a non-examining physician's testimony depends 'on the degree to which they provide supporting explanations for their opinions.'" Ryan v. Comm'r of Social Sec., 528 F.3d 1194, 1201 (9th Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(3)). Plaintiff emphasizes that Dr. Lebeau testified that he was not sure of the status of plaintiff's cubital tunnel syndrome and that he discussed the general treatment of carpal tunnel syndrome, rather than the specifics of plaintiff's treatment.[55] Plaintiff argues that Dr. Lebeau seemed unsure as to whether plaintiff had had surgery or whether other more conservative treatments, such as a cock-up splint, had been used.

But, as defendant points out, when Dr. Lebeau was testifying as to what functional limitations plaintiff had, Dr. Lebeau explained the basis for each limitation or why he was

---

[53]Admin. Rec. at 51.

[54]Admin. Rec. at 29.

[55]Admin. Rec. at 48.

not including any particular limitation.[56] The ALJ did not err as to Dr. Lebeau's opinion, or at least not for the reason plaintiff argues.

Finally, plaintiff argues that the ALJ erred as to Dr. Hansen. Dr. Hansen did a consultative exam on October 9, 2015. Dr. Hansen noted that plaintiff could "pick up a paperclip off the floor by flexing his spine and semi stooping with the index finger and thumb of each hand easily, although his hands are shaking."[57] Dr. Hansen's neuromuscular exam was as follows:

> The extension of left fingers 2, 3, 4, & 5 is weaker than the right. He has good normal bilateral grip strength of both hands. Motor strength of lower extremities reveals 5+ in dorsal flexion of both feet at the ankles and in plantar flexion of both feet. Range of motion – this is normal in all extremity joints. Atrophy – none evident and both calves are measured with maximal girth being 33 cm. There is atrophy of the left hand thenar muscles. Straight leg raising test is normal on the left to 70 degrees and on the right at 60 degrees elevation he has discomfort in the lower back.[58]

The ALJ considered Dr. Hansen's examination,[59] but plaintiff argues that the ALJ should have contacted Dr. Hansen to inquire as to whether Dr. Hansen believed that plaintiff had any functional limitations as a result of his left upper extremity impairment. Plaintiff argues that Dr. Hansen's findings, in particular his finding of atrophy of the left hand thenar muscles,

---

[56]Admin. Rec. at 50-54.

[57]Admin. Rec. at 877.

[58]Admin. Rec. at 877.

[59]Admin. Rec. at 26.

were consistent with Dr. Humphreys' findings with respect to atrophy in the left upper extremity as well as the clawed left hand and were sufficient to trigger the ALJ's duty to fully and fairly develop the record. Plaintiff argues that the ALJ should not have settled for a report from the agency's own examining doctor that did not contain any opinion as to functional limitations.

"The ALJ in a social security case has an independent 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)). But, an ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the "record is inadequate to allow for proper evaluation of the evidence." McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011) (citation omitted).

There was no reason for the ALJ to contact Dr. Hansen regarding any left upper extremity limitations given that Dr. Hansen did not conclude that plaintiff had any left upper extremity impairments. Rather, Dr. Hansen concluded that plaintiff had alcoholism, low back pain, short-term memory loss, and an intermittent hand tremor that was either related to alcohol withdrawal or was fictitious.[60] Moreover, the ALJ did further develop the record here because he had two medical experts testify at the administrative hearing. The ALJ did not err as to Dr. Hansen.

But, because the ALJ erred as to Dr. Humphreys' 2015 and 2017 opinions, the court

---

[60]Admin. Rec. at 878.

-18-

must determine whether to remand this matter for further proceedings or for an award of benefits. "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (emphasis deleted). "Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." Id.

In 2017, Dr. Humphreys opined that plaintiff would miss more than three days of work.[61] If that opinion were credited as true, plaintiff would be disabled because Weiss testified that such a person would not be able to maintain full-time employment.[62] But, there is the issue of alcohol abuse in this case. If plaintiff were found to be disabled, he must still prove that his substance abuse was not "a contributing factor material to the determination of disability." 20 C.F.R. § 404.1535(a). Thus, a remand for further proceedings is necessary here.

## Conclusion

The decision of the Commissioner is reversed and this matter is remanded for further proceedings.

DATED at Anchorage, Alaska, this 7th day of May, 2019.

/s/ H. Russel Holland
United States District Judge

---

[61]Admin. Rec. at 1017.

[62]Admin. Rec. at 76.